**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

v.

**Mary Louise FOURNIER, Defendant–Appellee.**

**No. 90SA36.**

Supreme Court of Colorado, En Banc.

July 16, 1990.

Edward J. Rodgers, III, Steven B. Rich, Chief Deputy Dist. Attys., Canon City, for plaintiff-appellant.

Jeffrey F. Manning, Canon City, for defendant-appellee.

Justice QUINN delivered the Opinion of the Court.

The People, in this interlocutory appeal, challenge the district court's suppression of marijuana plants and other items of evidence seized from the residence of the defendant, Mary Louise Fournier, during a search pursuant to a warrant. The district court ruled that the search was invalid because the affidavit for the search warrant was subscribed and sworn to before a court clerk rather than a judge as required by Crim.P. 41(c)(1). We conclude that, although the procedure followed by the issuing judge did not conform to the literal requirements of Crim.P. 41(c)(1), the issuance of the search warrant under the circumstances present here did not violate the constitutional proscription against unreasonable searches and seizures under ei-

ther the United States or the Colorado Constitution. U.S. Const.Amend. IV; Colo. Const. art. II, § 7. We accordingly reverse the suppression ruling.

## I.

The defendant is charged in the District Court of Fremont County with the cultivation of marijuana, § 18–18–106(8)(a), 8B C.R.S. (1986), allegedly committed on September 20, 1989. The charge is based on the seizure of several marijuana plants, a quantity of dried marijuana, and various items of drug paraphernalia from the defendant's residence on September 20, 1989, during a search pursuant to warrant. After entering a not guilty plea to the charge, the defendant filed a motion to suppress on several grounds including, as pertinent here, the claim that the affidavit for the search warrant was not sworn to or affirmed before a judge as mandated by Crim.P. 41(c)(1).

The district court conducted a hearing on the defendant's motion, and the evidence developed at the hearing established the following facts. On September 15, 1989, Detective Bert Battu of the Fremont County Sheriff's Office received an anonymous tip that there were marijuana plants growing in the back yard and in the basement of the home of Larry Fournier at 945 O Street in Penrose, Colorado. After receiving this information, Detective Battu arranged for another officer, Sonnie Rector, to go to the residence and pose as a potential purchaser of pigs that Fournier had advertised for sale. On September 19, 1989, Officer Rector went to the defendant's home for the ostensible purpose of examining the pigs and while at the home observed three marijuana plants growing in the backyard.

Detective Battu prepared an affidavit for a search warrant, and intended to submit the affidavit and proposed search warrant to a judge at the courthouse in Canon City. All three judges in the district, however, were attending a judicial conference out of town and thus were not available to review the affidavit. The detective was informed by the clerk of the court that on the follow-

ing day a senior judge [1] would be available in Fairplay, which is in Park County and is approximately seventy-five miles from Canon City. Because the detective was unable to swear to the affidavit before a judge, he requested the clerk to place him under oath and to acknowledge his signature on the affidavit. The detective was duly sworn by the clerk and signed the affidavit in the presence of the clerk, who then acknowledged in writing that the affidavit "was subscribed and sworn to before me on the 19th day of September, 1989."

The affidavit and proposed search warrant were then sent on the same day by an electronic facsimile transmission (FAX) to Fairplay for the judge's review. The judge issued the search warrant on September 20, 1989, and returned the documents to Detective Battu by a FAX transmission. Detective Battu then executed the warrant on the same day and seized the contraband and other evidence from the home of the defendant.

The district court granted the defendant's motion to suppress. Relying on that part of Crim.P. 41(c)(1) which requires that the affidavit for a search warrant be "sworn to or affirmed before the judge," the court concluded that such requirement is the only way "an impartial magistrate can make a decision as to whether or not there is probable cause to invade the privacy of an individual's home" and thus was basic to the constitutional protection against an unlawful search or seizure. In challenging the court's suppression ruling, the People contend that neither the United States nor the Colorado Constitution requires an affidavit to be sworn to or affirmed before a judge and thus any violation of Crim.P. 41(c) in this case did not amount to a constitutional violation requiring the suppression of the evidence seized during the execution of the warrant.[2]

## II.

The Fourth Amendment to the United States Constitution states that "no warrants shall issue, but upon probable cause, supported by oath or affirmation." Article II, section 7 of the Colorado Constitution prohibits the issuance of a search warrant unless there is probable cause "supported by oath or affirmation reduced to writing." Neither the United States nor the Colorado Constitution specifically addresses whether the applicant for a search warrant must physically appear before the issuing judge, nor does the federal or state constitution expressly mandate that the applicant must swear to or affirm the affidavit in the physical presence of the judge. Crim.P. 41(c)(1), however, does address these matters by providing as follows:

A search warrant shall issue only on affidavit *sworn to or affirmed before the judge* and relating facts sufficient to:
(I) Identify or describe, as nearly as may be, the premises, person, place, or thing to be searched;
(II) Identify or describe, as nearly as may be, the property to be searched for, seized, or inspected;
(III) Establish the grounds for issuance of the warrant, or probable cause to believe that such grounds exist; and
(IV) Establish probable cause to believe that the property to be searched for, seized, or inspected is located at, in, or upon the premises, person, place, or thing to be searched. (Emphasis added).[3]

1. The judge in Fairplay was a former district judge who had retired and was specially appointed pursuant to article VI, § 5(3) of the Colorado Constitution and section 24–51–1105, 10B C.R.S. (1988), to perform judicial duties in Fairplay during the time in question.

2. Section 16–3–303(1), 8A C.R.S. (1986), tracks the language of Crim.P. 41(c)(1) by providing that a search warrant "shall issue only on affidavit sworn to or affirmed before the judge." Although we analyze the issue before us in the context of Crim.P. 41(c)(1), our analysis applies equally to the statute.

The question of whether there was probable cause for the issuance of the search warrant is not before us in this proceeding.

3. Crim.P. 41(c)(2) states that the affidavit may include "sworn testimony reduced to writing and signed under oath by the witness giving the testimony before issuance of the warrant" and further states that a copy of the affidavit and a copy of the transcript of the testimony attached to the search warrant shall be filed with the court.

The question raised in this case is whether the requirement that the affidavit be "sworn to or affirmed before the judge" is a constitutional mandate, the violation of which triggers the application of the exclusionary rule.

■ The exclusionary rule is a judicially created remedy designed primarily to deter unlawful searches and seizures by the police. *E.g., United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *People v. Schoondermark,* 759 P.2d 715 (Colo.1988). In the absence of the good faith or other recognized exception to the exclusionary rule,[4] evidence obtained by the police as a result of an unlawful search or seizure is not admissible against a defendant in the state's case in chief. *See generally United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *Schoondermark,* 759 P.2d 715. Where, however, a law enforcement officer obtains evidence in violation of a statute or regulation, the exclusionary rule is not triggered unless the unauthorized conduct also amounts to a constitutional violation. *E.g., United States v. Caceres,* 440 U.S. 741, 749–50, 99 S.Ct. 1465, 1470–71, 59 L.Ed.2d 733 (1979); *United States v. Rome,* 809 F.2d 665, 669 (10th Cir.1987); *People v. Thiret,* 685 P.2d 193, 200 (Colo.1984); *People v. Hamilton,* 666 P.2d 152, 156–57 (Colo.1983); *People v. Wolf,* 635 P.2d 213, 217 (Colo.1981).

The requirement of Crim.P. 41(c)(1) that the affidavit be "sworn to or affirmed before the judge" serves the salutary purpose of impressing upon the affiant and the issuing judge the serious nature of the warrant process and the legal significance of the oath or affirmation to that process. We commented on the significance of the rule in *People v. Brethauer,* 174 Colo. 29, 482 P.2d 369 (1971). The precise issue in *Brethauer* was whether the affidavit in question satisfied the constitutional standard of probable cause. In holding that probable cause must be determined solely on the basis of the averments within the four corners of the affidavit, we made the following observation with respect to Crim.P. 41(c)(1):

> It is, of course, elementary and of no consequence that the police might have had additional information which could have provided a basis for the issuance of the warrant. Should the judge to whom application has been made for the issuance of a search warrant determine that the affidavit is insufficient, he can require that sworn testimony be offered to supplement the warrant or can demand that the affidavit be amended to disclose additional facts, if a search warrant is to be issued. Under our Constitution, the warrant can only be issued upon probable cause supported by oath or affirmation which is reduced to writing. Colo.Const. art. II § 7. Moreover, Crim.P. 41(c) requires an affidavit to support a search warrant, which establishes the grounds for the issuance of the warrant, and demands that the affidavit be sworn to before the judge. Accordingly, the testimony taken would have to be reduced to writing and signed by the witness or witnesses that offered testimony, under oath, to supplement the affidavit.

174 Colo. at 39–40, 482 P.2d at 374. It is clear that when the above *Brethauer* discussion is read in the context of the probable cause issue raised in that case, nothing in that discussion suggests an intent to constitutionalize that part of the rule requiring that the affidavit be sworn to or affirmed before the issuing judge.

■ Although we acknowledge in this case that the literal terms of Crim.P. 41(c)(1) were not complied with when the judge issued the search warrant based on an affidavit sworn to before the clerk of the court, we are satisfied that noncompliance with the rule is not the categorical equivalent of a constitutional violation that automatically triggers exclusionary rule principles. *See, e.g., United States v. Gitcho,* 601 F.2d 369, 372 (8th Cir.1979) *cert.*

---

**4.** Section 16–3–308(1), 8A C.R.S. (1986), states that evidence otherwise admissible in a criminal proceeding shall not be suppressed if the court determines that the evidence was seized by a peace officer as a result of a good faith mistake or a technical violation. Because we conclude that no constitutional violation occurred in this case, we need not consider the applicability of the good faith or technical violation exception to this case.

*denied*, 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979); *State v. Liberti*, 161 N.J.Super. 575, 392 A.2d 169, 172 (App.Div. 1978). We hasten to add, however, that the text of Crim.P. 41(c)(1) requiring that the affidavit be sworn to or affirmed before the issuing judge, while not indispensable to the constitutional validity of a search, is calculated to enhance compliance with the "reduced to writing" requirement of the Colorado Constitution, *see Brethauer*, 174 Colo. at 40, 482 P.2d at 374, and is not to be viewed as a mere formality. Unless and until the present text of the rule is changed, any departure from Crim.P. 41(c)(1) must be justified by a clear showing of good cause. Circumstances can be imagined where an officer might deliberately evade the requirements of the rule in order to subject a person to a search that "might not have occurred or would not have been so abrasive if the rule had been followed." *United States v. Radlick*, 581 F.2d 225, 228 (9th Cir.1978). Such conduct could amount to such a fundamental violation of legal process as to warrant the remedy of suppression. *Id.; see generally Rome*, 809 F.2d at 669; *United States v. Vasser*, 648 F.2d 507, 510–11 (9th Cir.1980), *cert. denied*, 450 U.S. 928, 101 S.Ct. 1385, 67 L.Ed.2d 360 (1981); *United States v. Turner*, 558 F.2d 46, 52–53 (2nd Cir.1977).

### III.

In the instant case, there was no evidence that Detective Battu deliberately evaded the requirements of Crim.P. 41(c)(1). On the contrary, the record shows that no judges were available at Canon City on September 19, 1989, to administer the oath or affirmation and to review the affidavit and that a senior judge would not be available until the following day at a location considerably distant from Canon City and in another county. Under these circumstances the detective had good cause to subscribe and swear to the affidavit before the clerk of the court. By statute, judges, court clerks, and deputy court clerks are empowered to administer "oaths required to be taken by any person upon any lawful occasion and to take affidavits ... concerning any matter [or] process ... wherein such affidavit ... is authorized or by law required to be taken." § 24–12–103, 10A C.R.S. (1988). The detective swearing to the affidavit before the clerk of the court was thus impressed with the legal significance of the oath and his legal obligation to include only truthful matters in the affidavit.[5] Moreover, since the detective was engaged in an ongoing investigation of illegal drug activity and there was some need to act without unnecessary delay, it was appropriate for the detective to transmit the affidavit and proposed search warrant to the senior judge by electronic facsimile process. As a result of this process, the judge, before issuing the search warrant, had the opportunity to thoroughly review the contents of the affidavit and to determine whether the federal and state constitutional standards of probable cause and particularity were satisfied. Finally, the record is devoid of any suggestion that the defendant was subjected to a search that would not have occurred at all, or that the search would have been carried out in a substantially different manner, if the affidavit had been sworn to or affirmed before the judge rather than the clerk of the court. Under these circumstances, there was no basis in fact or law for the suppression of the evidence obtained as a result of the execution of the search warrant.

The suppression ruling is accordingly reversed.

---

**5.** At least one court has stated that the test in determining if the oath or affirmation requirement has been satisfied is whether the procedures followed were such that perjury could be charged if the affiant knowingly falsified any material allegations in the affidavit. *Simon v. State*, 515 P.2d 1161, 1165 (Okl.Crim.App.1973); *see also People v. Sullivan*, 56 N.Y.2d 378, 452 N.Y.S.2d 373, 437 N.E.2d 1130 (1982); 2 W.

LaFave § 4.3(d) at 180–81 (1987). Under Colorado law, the making of a materially false statement in an affidavit for a search warrant, when the person so swearing does not believe the statement to be true and makes the statement with an intent to mislead the judge into issuing the warrant, would constitute perjury in the second degree. § 18–8–503, 8B C.R.S. (1988).